Linda COLSON, Colson's Pyramid
Lounge and Restaurant,
Plaintiffs,

v.

CITY OF SHAKER HEIGHTS, Patricia S. Mearns, Philip C. Heintzelman, Stephen J. Alfred, Joyce G. Braverman, Donald P. Kral, Robert Balogh, Dr. Edgar B. Jackson, Frank S. Novak, Terrence L. Brennan, Ohio Department of Liquor Control, Michael A. Akrouche, John R. Hall, Bob Taft, Cuyahoga County Board of Elections, Marguerite Hughes, Kenneth Fisher, Thaddeus J. Jackson, Roger M. Synenberg, the Honorable Lee I. Fisher, Jay Schonfeld, Sussex Neighborhood Association, Carolyn Garvin, James F. Calland, Lomond Association, Richard R. Crews, Darlene R. Leahy, Maxwell H. Davis, Marguerite Bibb, Anne R. Phoenix, Jeffrey A. Stroup, Joyce B. Solomon, John Doe I and II, Unknown Officials of the City of Shaker Heights, Jane Doe I and II, Unknown Officials of the City of Shaker Heights, Joe Doe I and II, Unknown Members of Sussex Neighborhood Association, June Doe I and II, Unknown Members of Sussex Neighborhood Association, Jeff Doe I and II, Unknown Members of Lomond Association, Jean Doe I and II, Unknown Members of Lomond Association, Defendants.

No. 1:93CV2160.

United States District Court,
N.D. Ohio,
Eastern Division.

March 31, 1995.

Jennifer L. Brunner, Rick L. Brunner, Brunner & Brunner, Columbus, OH, for plaintiffs.

Robert C. Tucker, Shelley A. Goering, Arter & Hadden, Cleveland, OH, Grady L. Pettigrew, Jr., Arter & Hadden, Chester T. Lyman, Jr., Office of the Atty. Gen., Barbara A. Serve, Office of the Atty. Gen., Labor Rela-

tions Section, Andrew I. Sutter, Office of the Atty. Gen., Columbus, OH, Michael P. Butler, Office of the Pros. Atty., Charles E. Jarrett, Baker & Hostetler, Cleveland, OH, Sherri B. Lazear, Elizabeth Anne McNellie, Baker & Hostetler, Columbus, OH, William B. Leahy, Thompson, Hine & Flory, Cleveland, OH, William R. Case, Thompson, Hine & Flory, Columbus, OH, for defendants.

*MEMORANDUM OF OPINION AND OR-DER GRANTING THE OHIO DE-FENDANTS' MOTION TO DISMISS, GRANTING THE ASSOCIATION DE-FENDANTS' MOTION FOR JUDG-MENT ON THE PLEADINGS, AND GRANTING CITY DEFENDANTS' AND BOARD OF ELECTIONS' MO-TIONS FOR SUMMARY JUDGMENT*

WELLS, District Judge.

### INTRODUCTION

This case is before the Court on (1) the motion to dismiss filed by defendants Ohio Department of Liquor Control, Michael Akrouche, and John R. Hall (collectively, the "Ohio Defendants"); (2) the motion for judgment on the pleadings filed by defendants Sussex Community Association, Lomond Association, Jay Schonfeld, Richard R. Crews, Maxwell H. Davis, Marguerite Bibb, Anne R. Phoenix, Carolyn Garvin, James F. Calland, Jeff Stroup, and Thomas J. Hildebrandt (collectively, the "Association Defendants"); (3) the motion for summary judgment·filed by defendants City of Shaker Heights, Patricia S. Mearns, Philip C. Heintzelman, Stephen J. Alfred, Joyce G. Braverman, Donald P. Kral, Robert Balogh, Dr. Edward B. Jackson, Frank S. Novak and Terrence L. Brennan (collectively, the "City Defendants"); (4) the motion for summary judgment filed by defendants Cuyahoga County Board of Elections, Marguerite Hughes, Kenneth Fisher, Thaddeus Jackson, and Roger Synenberg (collectively, the "Board of Elections Defendants"); and (5) the motion for partial summary judgment filed by plaintiffs Linda Colson and Colson's Pyramid Lounge and Restaurant, Inc.

The Court referred these motions to United States Magistrate Judge David S. Perelman for a report and recommendation.

Magistrate Judge Perelman has filed his report and recommendation, recommending that the Court enter judgment for the defendants on each of plaintiffs' claims. Plaintiffs have objected to the Magistrate Judge's report and recommendation. For the reasons which follow, the Court accepts and adopts the Magistrate Judge's report and recommendation and will enter judgment for the defendants.

### THE COMPLAINT

The complaint in this case is thirty-six pages and 161 numbered paragraphs long; one paragraph includes thirty-nine separate subparagraphs. It consists of four "counts," the first demanding a declaratory judgment, the second demanding "further relief pursuant to 28 U.S.C. § 2202" (the Declaratory Judgment Act), the third apparently demanding injunctive relief, and the fourth asserting that certain defendants are not entitled to qualified immunity.

### 1. *Factual Background*

The complaint alleges plaintiff Linda Colson is the owner of a building at 20300 Chagrin Boulevard, Shaker Heights, Ohio, and is the president, chief executive officer, and principal shareholder of plaintiff Colson's Pyramid Lounge and Restaurant, Inc. (the "Lounge"). The Lounge operated a restaurant and lounge on the Chagrin Boulevard premises and is the record holder of a D-5 liquor permit issued by the Ohio Department of Liquor Control.

The complaint contends that in late 1990 or early 1991, the Lounge applied to the Ohio Department of Liquor Control for a liquor permit for the Chagrin Boulevard premises. A permit was issued sometime in 1991, and was kept in safekeeping by the Department pending the completion of renovations and the issuance of an occupancy permit.

In September 1991, a City official notified the Department of Liquor Control about a tax dispute between Colson and Cuyahoga County, and suggested that the Department should undertake "further investigation and/or monitoring." The City further suggested that the tax dispute "materially af-

fects the status of the ... liquor permit, warranting further review, and upon the demonstration of good cause, cancellation of said permit." Plaintiffs assert this action was "unusual and irregular," and unwarranted, because the Lounge was the holder of the permit while Colson was the person responsible for the taxes as the owner of the building. She contends the letter was intended to delay, hinder or interfere with the issuance of a liquor permit to the Lounge.

In April 1991, Colson obtained approval from the Shaker Heights Planning Commission for the plans for the proposed Lounge on the Chagrin Boulevard property. The matter was then referred to the Shaker Heights City Council for its approval. The City Council meeting was held in late April or early May 1991. Members of two neighborhood associations, the Sussex Neighborhood Association and the Lomond Association, appeared at the meeting and opposed plaintiffs' applications. City Council disapproved plaintiffs' application, and asked them to revise the plan to show a full kitchen on the premises.

While her applications were pending, Colson obtained a permit to erect a sign at the premises, and erected a sign. Shortly after the City Council meeting, a city building inspector ordered Colson to remove the sign. Colson claims there was no authorization for this order in the local ordinances, and the order was issued to harass her and appease local residents who opposed her restaurant. The complaint notes that a nearby "bottle" or supper club, Elsner's, had posted a sign although it was not open for business at that time. Colson also claims she was suddenly ordered not to store vehicles from her limousine service at the premises, although she had never received any complaint about the limousines before.

Colson submitted revised plans to the Planning Commission, and appeared at the next planning commission meeting on approximately June 1, 1991. At that meeting, the Commission determined that the City Code contained an inadequate definition of the term "restaurant" and continued Colson's application until the next meeting. At the next meeting on July 1, 1991, the Planning

Commission approved a proposed definition of the term "restaurant" which restricted the hours of operation of a restaurant in a Local Retail District. The Planning Commission then approved Colson's application "to operate a restaurant as defined in the earlier motion with hours of operation in regard to closing time to conform to those specified in the earlier motion." The minutes of the meeting state that "Council must confirm these actions." City Council later approved the Planning Commission's recommendation. Colson contends that the limited hours of operation were directed specifically at her restaurant, and were not made a general policy for restaurants in local retail districts. She further claims these limits were unconstitutionally vague.

Colson obtained a building permit and a permit to install electrical equipment, and completed most of the construction needed to operate the restaurant by early January 1992. She requested a city inspection of the premises. The City then posted a "Stop Work Order," stating that the plans for the restaurant had not been approved by the Building Department or the Law Department. Plaintiffs contend this was untrue, and was an effort to delay, hinder or interfere with the release of the Lounge's liquor permit, which depended on the issuance of an occupancy permit for the premises.

From December 1991 through February 1992, members of the Sussex Neighborhood Association circulated local option election petitions to place on the election ballot of Precinct R in the City of Shaker Heights the question whether to prohibit the sale of intoxicating liquor and wine for on-premises consumption. The complaint points out the petition did not seek to prohibit the sale of beer by the glass, nor did it seek to prohibit the sale of alcohol for off-premises consumption, nor did it seek to prohibit the consumption of alcohol in commercial establishments such as Elsner's, a "bottle club" which allows members to bring and drink their own alcoholic beverages on the premises. The local option issue was later certified to be placed on the ballot.

Plaintiffs contend the circulation of the local option petition constituted "intentional

racial discrimination in property transactions" and a conspiracy to discriminate against Colson on the basis of race. Finally, plaintiffs assert the local option petition laws violate due process and deny them equal protection.

Colson obtained an occupancy permit sometime in the Spring of 1992, but claims she had difficulty retrieving the Lounge's liquor license from safekeeping with the Ohio Department of Liquor Control because of the City's letter regarding Colson's tax problems. The Lounge was not able to open until approximately the time of the local option election on June 2, 1992. When the complaint was filed, the results of the local option elections had not been certified, but if certified, would have resulted in the prohibition of the sale of liquor and wine for on-premises consumption in Precinct R.

### 2. *Legal Claims.*

Despite the factual detail provided in the complaint, the legal claims asserted by plaintiffs are unclear. Plaintiffs state they seek relief under 42 U.S.C. §§ 1982, 1983, 1985(3), and 1986, and a declaratory judgment that Ohio's local option election laws, Ohio Rev. Code Ann. §§ 4301.33, 4301.35 and 4301.39, violate Article I, § 10 and the Fifth and Fourteenth Amendments to the United States Constitution and Article II, §§ 1, 2, 16, and 28 of the Ohio Constitution. The Ohio Defendants were named because they are statutorily required to amend affected liquor permits following a local option election; the Board of Election Defendants were named because they have a statutory duty to validate local option election petitions, certify the issue for the ballot, and certify the results of the election. Plaintiffs therefore apparently claim these defendants deprived them of their constitutional rights in violation of 42 U.S.C. § 1983 when they performed these statutory duties. The Association Defendants and the City Defendants allegedly violated 42 U.S.C. §§ 1982, 1983, 1985(3) and 1986.

### LAW AND ANALYSIS

**1.** *Ohio Defendants' Motion to Dismiss/Plaintiffs' Motion for Partial Summary Judgment.*

The Ohio Defendants have moved to dismiss the claims against them on the grounds that the Ohio local option election laws are constitutional as a matter of law. Plaintiffs have moved for partial summary judgment on this issue.

Magistrate Judge Perelman has recommended that the Court grant the Ohio Defendants' motion to dismiss. The Magistrate Judge concluded the Ohio local option election statutes at issue did not violate either the Due Process Clause or the Equal Protection Clause. Plaintiffs contend Magistrate Judge Perelman used the wrong standard of review when he recommended that the Court grant the Ohio Defendants' motion. Careful review of the Magistrate Judge's report, however, makes it clear the Magistrate Judge applied the correct standard of review.[1]

In reviewing the Ohio Defendants' motion to dismiss, the Court must accept the factual allegations of the complaint as true. Plaintiffs challenge the constitutionality of Ohio Rev.Code Ann. §§ 4301.33, 4301.35, and 4301.39 under the Due Process and Equal Protection Clauses of the Fifth and Fourteenth Amendments to the United States Constitution. Ohio Rev.Code Ann. §§ 4301.32 *et seq.* provide election precincts or residence districts in the State of Ohio with the privilege of local option as to the sale of intoxicating liquor. Section 4301.35 permits the submission of any one or more of the following questions to the electors of a precinct:

(A) "Shall the sale of wine and mixed beverages by the package, under permits which authorize sale for off-premise consumption only, be permitted in ..........?"

(B) "Shall the sale of wine and mixed beverages, under permits which authorize sale for on-premise consumption only, and under permits which authorize

---

**1.** In any case, plaintiffs themselves moved for summary judgment on this issue, so application of a summary judgment standard would not have been inappropriate.

sale for both on-premise and off-premise consumption, be permitted in . . . . . . . . . . ?"

(C) "Shall the sale of spirituous liquors by the glass be permitted in . . . . . . . . . . ?"

(D) "Shall state liquor stores for the sale of spirituous liquor by the package, for consumption off the premises where sold, be permitted in . . . . . . . . . . ?"

Section 4301.33 provides the procedure for circulating a petition for a local option election and placing the issue on the ballot. Among other things, the petitioner must obtain a list of affected liquor permit holders from the Ohio Department of Liquor Control, and must attach the list to each petition paper circulated. Section 4301.39 provides the procedure for notifying the Ohio Department of Liquor Control of the election results, and provides for the disposition of liquor permits following a local option election. In general, passage of a local option referendum does not revoke an affected liquor permit, but only limits the use of the permit in the election precinct. If use of a permit is made partially unlawful by a local option election, the Department of Liquor Control will amend and reissue the permit; if it is made wholly unlawful, then the Department will hold the permit for safekeeping, but will allow it to be transferred to another establishment outside the "dry" area.

### a. Due Process

■ Plaintiffs contend the local option election laws deprive them of property (the liquor license) arbitrarily, and are not rationally related to any legitimate state purpose. The liquor license was issued to the Lounge, not to Colson, so the local option election laws could not have deprived Colson of any property, and she cannot claim any violation of her due process rights. In support of their contention that the Lounge was deprived of property without due process, plaintiffs primarily rely upon the decision of the Sixth Circuit Court of Appeals in *Brookpark Entertainment, Inc. v. Taft*, 951 F.2d 710 (6th Cir.1991). In *Brookpark*, the Sixth Circuit concluded that the holder of an Ohio liquor license has a property interest protected by the Due Process Clause. The Court

then concluded that a local option election statute which permitted the electors to revoke the liquor license of a single establishment violated Due Process because it permitted the voters to "gang up" on a particular business and drive it out for reasons unrelated to any valid public purpose.

The law at issue here contains none of the evils which made the statute at issue in *Brookpark* unconstitutional. Initially, it is important to note the statutes here do not permit the voters to revoke a liquor license; they merely allow the voters to prohibit particular kinds of liquor sales within their district. The Lounge could still use its liquor license at another location outside the "dry" precinct. It is therefore questionable whether the Lounge has been deprived of any property at all.

The statutes involved in this case do not permit voters to target particular establishments. Plaintiffs argue the statutes are arbitrary because they permit voters to "pick and choose" between the types of permit holders they wish to exclude, citing the preliminary injunction order in *Sam & Ali, Inc. v. Ohio Dept. of Liquor Control*, Case No. C2–92–1193 (S.D.Ohio January 24, 1994). However, there are obvious distinctions between different types of licensees. Establishments that sell alcohol for on-premises consumption and those that sell alcohol for off-premises consumption are subject to different, legitimate public interest concerns, as are establishments which sell alcohol and those that simply permit the consumption of alcohol on their premises. Particular businesses cannot be "targeted" under these statutes because voters must completely exclude *all* businesses holding a particular type of license. Moreover, voters cannot vote on the issue again for four years. Ohio Rev.Code Ann. § 4301.37. These protections prevent the type of arbitrary action which rendered the statute in *Brookpark* unconstitutional. The Court therefore finds that the Ohio local option election laws at issue here do not violate the Due Process Clause. *See Philly's v. Byrne*, 732 F.2d 87 (7th Cir.1984).

### b. Equal Protection

■ Plaintiffs contend the Ohio local option election laws violate the Equal Protec-

tion Clause because they treat "similarly situated persons in the liquor business differently without a rational basis." First, plaintiffs claim only "C" and "D" permit holders may be affected by a local option election, and the voters may "pick and choose" among "C" and "D" permit holders. Furthermore, plaintiffs assert "Ohio's statutory scheme does not even address regulation of establishments that charge their patrons a fee to drink on their premises, such as the 'bottle club' known as Elsner's." Therefore, plaintiffs claim the Ohio law permits voters to discriminate selectively against certain types of liquor establishments, without a rational basis.

There is nothing invidiously discriminatory about Ohio's local option election scheme, so strict scrutiny is not required here. Rather, the Court must determine whether the statutory scheme is rationally related to a legitimate governmental purpose. *See Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 446, 105 S.Ct. 3249, 3257–58, 87 L.Ed.2d 313 (1985). Plaintiffs apparently argue that, to comply with the Equal Protection Clause, Ohio's local option election laws must provide for elections which will either permit or exclude all kinds of sales of all kinds of alcohol, and all consumption of alcohol. Plaintiffs do not explain, however, how all alcohol sales and all consumption of liquor on business premises, are "similarly situated." In attacking these statutes, plaintiffs bear the burden of showing that the classifications are arbitrary and cannot serve a legitimate governmental goal. *Curto v. City of Harper Woods*, 954 F.2d 1237, 1245 (6th Cir.1992). The mere fact that liquor is involved in all such transactions does not mean that any distinctions among them are arbitrary and do not serve any governmental interest.

The "all or nothing" approach advocated by plaintiffs is not the only rational one. The distinction between sales of alcohol for on-premises consumption and for off-premises consumption is rationally related to legitimate concerns such as crowd control and unruly behavior which may accompany liquor sales for consumption on the premises. It is also rational for the local option election laws to distinguish between liquor sales and liquor

consumption, since the state only regulates sales, not consumption. Therefore, Ohio Rev.Code Ann. §§ 4301.33, 4301.35, and 4301.39 do not violate the Equal Protection Clause.

The sole basis for plaintiffs' claims against the Ohio Defendants is that they are responsible for enforcing the local option election laws, and must, among other things, pick up and amend liquor licenses affected by a local option election. Plaintiffs sought to enjoin these defendants from performing this duty because plaintiffs claimed the statute was unconstitutional. The Court having found the local option election laws at issue here do not violate the Due Process Clause or the Equal Protection Clause, the claims against these defendants must be dismissed.

2. *Board of Elections Defendants' Motion for Summary Judgment.*

The reasons which support dismissal of the claims against the Ohio Defendants also require dismissal of the claims against the Board of Elections Defendants. These defendants were named in the complaint only because they have the statutory duty to validate petitions for local option elections, certify the issues for the ballot, and certify the results of local option elections. Plaintiffs sought to enjoin the Board of Elections Defendants from performing these duties because the local option election statutes were unconstitutional. Because this Court has found no violation of plaintiffs' rights to due process or equal protection, plaintiffs claims against the Board of Elections Defendants must also be dismissed.

3. *Association Defendants' Motion for Judgment on the Pleadings.*

Magistrate Judge Perelman concluded that the Association Defendants were entitled to judgment as a matter of law on plaintiffs' claims under 42 U.S.C. §§ 1982, 1983, 1985(3) and 1986 because there was no evidence that the actions of these defendants were racially motivated. Plaintiff objects that the Magistrate Judge applied the wrong standard of review to the Association Defendants' motion. Despite the voluminous evidentiary materials submitted by the plaintiffs

and some of the other defendants in connection with other dispositive motions in this case, no evidence was submitted explicitly in support of or in opposition to this motion, so the Court must agree that the summary judgment standard does not apply. A motion for judgment on the pleadings requires the Court to accept the factual allegations of the complaint as true, and to determine whether the moving party is entitled to judgment as a matter of law. A motion for judgment on the pleadings should be granted only if it appears beyond doubt that plaintiffs can prove no set of facts which would entitle them to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1959). Consideration of evidence in determining the motion is therefore inappropriate, unless the parties themselves treat the motion as a motion for summary judgment or the Court notifies the parties that it intends to treat the motion as a summary judgment motion.

■ Nonetheless, the Court concludes the Association Defendants are entitled to judgment as a matter of law. The constitutional "right of the people peaceably to assemble and to petition the Government for a redress of grievances" provides immunity from liability for petitioning activities. *See Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961); *United Mine Workers v. Pennington*, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965). Plaintiffs assert the Association Defendants were not petitioning the government, but were actually exercising a delegated legislative power when they sought to place the local option issue on the ballot. The Association Defendants had no power to vote the precinct "dry" on their own, however. All they did was petition to present the issue to the voters. "[T]he same principles govern attempts to influence legislative, executive, administrative and judicial proceedings and should also govern attempts to legislate through the initiative process." *Subscription TV v. Southern California Theatre Owners*, 576 F.2d 230, 232 (9th Cir.1978); *see also United States v. State of Michigan*, 460 F.Supp. 637, 638–39 (W.D.Mich.1978). The initiative process is a petitioning activity, as protected by the First Amendment as lobbying the legislature or filing a lawsuit.

■ The immunity provided by the First Amendment right to petition does not protect a defendant who uses illegal means to influence governmental action. *See, e.g., In re IBP Confidential Business Documents Litigation*, 755 F.2d 1300, 1313 (8th Cir. 1985). In their response to the Association Defendants' motion for judgment on the pleadings, plaintiffs claim the Association Defendants "illegally" circulated some petitions without a list of the affected liquor permit holders attached to it. Therefore plaintiffs claim the Association Defendants' petitioning activity was not protected by the First Amendment.

This allegation is not contained in the complaint. More importantly, plaintiffs misapprehend the meaning of the illegal activity exception. Irregularities in the form of the petitions may invalidate the petitions, but they do not exert the sort of improper influence on governmental decisions which excludes them from First Amendment protection. There is no allegation that the Association Defendants attempted to defraud the signatories to the petition or otherwise illegally influence them to sign the petitions. Nor is there any allegation of illegal influence on the voters in the local option election. *Cf. Westborough Mall v. City of Cape Girardeau*, 693 F.2d 733, 746 (8th Cir.1982). Therefore, the "illegal means" exception to First Amendment immunity does not apply.

■ Plaintiffs also assert the Association Defendants' circulation of petitions for the local option election was a "sham" which, although "ostensibly directed toward influencing governmental action," was actually nothing more than an attempt to harm plaintiffs. *See Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 144, 81 S.Ct. 523, 533, 5 L.Ed.2d 464 (1961); *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972). Plaintiffs contend "the Association Defendants [were] trying to circumvent the civil rights laws through the operation of the state's local option laws." Again, however, plaintiffs misapprehend the "sham" exception. The First

Amendment protects attempts to influence the passage or enforcement of laws, regardless of the motivation of the petitioner, and regardless of how harmful its impact on third parties may be. *See Gorman Towers, Inc. v. Bogoslavsky,* 626 F.2d 607, 615 (8th Cir. 1980); *Weiss v. Willow Tree Civic Assn.,* 467 F.Supp. 803, 818 (S.D.N.Y.1979). The "sham" exception to First Amendment immunity will permit liability where the alleged petitioning activity was not intended to influence governmental action at all, but was intended to injure the plaintiff directly. *Gorman Towers,* 626 F.2d at 615. Here, there can be no question that the Association Defendants' actions in attending a city council meeting and circulating local option election petitions were intended to, and actually did, influence governmental action by putting the local option issue on the ballot. There is nothing in the complaint which might demonstrate that these activities were a sham.

The Court therefore concludes that the Association Defendants are immune from liability under the First Amendment to the United States Constitution for their opposition to plaintiff's project at the city council meeting, and for their activities in circulating local option election petitions. Plaintiffs do not assert any other actions by these defendants which might create liability under 42 U.S.C. §§ 1982, 1983, 1985(3) or 1986. Therefore, the Association Defendants are entitled to judgment as a matter of law.

### 4. *City Defendants' Motion for Summary Judgment.*

█ Each of plaintiffs' claims against the City Defendants under 42 U.S.C. §§ 1982, 1983, 1985, and 1986 requires proof that the City Defendants' conduct was racially motivated. *Asbury v. Brougham,* 866 F.2d 1276 (10th Cir.1989) (§ 1982 claim); *Village of Arlington Heights v. Metropolitan Housing Authority,* 429 U.S. 252, 265, 97 S.Ct. 555, 563, 50 L.Ed.2d 450 (1977) (Equal Protection claim); *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1970) (§ 1985(3) claim); *Boddie v. American Broadcasting Cos., Inc.,* 694 F.Supp. 1304, 1310 (N.D.Ohio 1988), *aff'd,* 881 F.2d 267 (6th Cir.1989), *cert. den.* 493 U.S. 1028, 110 S.Ct.

737, 107 L.Ed.2d 755 (1990) (§ 1986 claim cannot exist without a violation of § 1985). Magistrate Judge Perelman concluded there was no evidence in the record to support plaintiffs' assertion that the City Defendants treated her differently because of her race.

Plaintiffs' claims against the City Defendants arise from (a) the alleged difficulties Colson had in obtaining permits and City approval for the building project, and inconsistent information she received from City officials about the process, (b) the City's letter to the Ohio Department of Liquor Control, advising it about Colson's property tax problems, (c) City employees' attendance at meetings of the neighborhood associations, and (d) City employees' alleged participation in beginning the local option election petition process.

The Court agrees with Magistrate Judge Perelman that there is no evidence that the City's handling of the Colson's applications for permits and variances, or its other conduct in dealing with Colson's efforts to renovate her building, were discriminatory or racially motivated. Plaintiffs assert "the City engaged in a campaign of obstacles, impairing Plaintiffs' attempts to operate their business," but there is no evidence that plaintiffs were treated differently than other property owners, and in any event, there is no evidence that the City was motivated by racially discriminatory animus. There is also no evidence that the City's correspondence with the Ohio Department of Liquor Control was racially motivated or discriminatory. City employees' attendance at neighborhood association meetings at which racially discriminatory statements were made does not demonstrate that the City's conduct was motivated by discrimination. Mere attendance at a meeting will not suffice to demonstrate intentional discrimination by the City. Finally, there is no evidence to support plaintiffs' contention that the City "participated extensively" in the local option election petition process. Even if City officials did somehow encourage local option election petitions, there is no evidence that their actions were racially motivated. Therefore, the City Defendants are entitled to judgment as a matter of law.

CONCLUSION

For the foregoing reasons, the Court finds that Ohio Rev.Code Ann. §§ 4301.33, 4301.35 and 4301.39 do not violate the Due Process Clause or Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Therefore, plaintiffs claims against the Ohio Defendants and the Board of Elections Defendants under 42 U.S.C. § 1983 must be dismissed as a matter of law. Furthermore, under the First Amendment to the United States Constitution, the Association Defendants are immune from liability for petitioning to present the option election issue to the voters of Precinct R and for opposing plaintiffs' applications before the Shaker Heights City Council. Finally, there is no evidence that the City Defendants actions here were racially motivated, so the City Defendants are entitled to judgment as a matter of law on plaintiffs' claims under 42 U.S.C. §§ 1982, 1983, 1985(3) and 1986. Accordingly, the Court will dismiss plaintiffs' claims against the Ohio Defendants, the Board of Elections Defendants, and the Association Defendants, with prejudice. The Court will enter judgment in favor of the City Defendants and against plaintiffs.[2]

2. Two other defendants, Darlene H. Leahy and Joyce B. Solomon, were named as members or officers of the neighborhood associations. Plaintiffs' claims against these defendants were voluntarily dismissed in February 1994. Plaintiffs' claims against defendants Lee I. Fisher and Bob Taft were also dismissed by the Court in February 1994. Hence, this order disposes of all claims against all remaining parties.