**M&F SUPERMARKET, INC., et al., Plaintiffs,**

**v.**

**Donna OWENS, Director Ohio Department of Commerce, et al., Defendants.**

**No. 97–CV–1357.**

United States District Court, S.D. Ohio, Eastern Division.

Dec. 31, 1997.

---

Donald Joseph McTigue, McTigue & Brooks, Columbus, OH, for Plaintiffs.

Barbara Ann Serve, Ohio Atty. Gen., Columbus, OH, for Defendants.

## *OPINION AND ORDER*

MARBLEY, District Judge.

### BACKGROUND

Plaintiffs, M&F Supermarket, Inc. ("M&F") doing business as Key Food and Mohammed Rahman, bring this action challenging the constitutionality of O.R.C. §§ 4301.32, 4301.36, 4301.37, 4301.39, 4301.391, 4303.272, and 4305.14 (collectively the "local option election laws"). Plaintiffs requested a Temporary Restraining Order ("TRO") and/or Preliminary Injunction prohibiting Defendants, Donna Owens, Director of the Ohio Department of Commerce and William Vasil, Superintendent of the Division of Liquor Control of the Ohio Department of Commerce, from canceling, restricting, or otherwise prohibiting the continued use of Plaintiffs' Liquor Permit No. 5382175–000. This Court ordered the hearing for the TRO and/or Preliminary Injunction to be consolidated with a trial on the merits under Fed.

R.Civ.P. 65(a)(2). The bench trial was held on December 18, 1997.

Ohio law provides for "local option elections" in precincts or residence districts, where the local voters via an initiative and referendum may forbid certain sales of alcoholic beverages otherwise authorized by licenses issued by the Ohio Division of Liquor Control. The local option election held on November 4, 1997, resulted in the prohibition of the sale of beer, wine and certain prepackaged mixed drinks for carry out and for Sunday sale in the City of Columbus, Franklin County, Ward 17, Precinct D. Plaintiffs own and operate a grocery store, Key Food, which sells alcohol in Precinct D. According to Defendant Ohio Department of Commerce, the Plaintiffs would no longer be able to sell alcohol at their Key Food location after December 18, 1997. (Joint Ex. 1).

Plaintiffs allege that O.R.C. §§ 4301.32, 4301.36, 4301.39, 4301.391, 4303.272, and 4305.14 violate, on their face and as applied, the Plaintiffs due process rights under the Fourteenth Amendment to the United States Constitution by retroactively depriving them of their property interest in their liquor license and Rahman's liberty and property interest in pursuing his occupation. Plaintiffs also allege that these statutes, on their face and as applied, prohibit Key Food from continuing to sell alcoholic beverages which impairs Plaintiffs contractual obligations with their landlord in violation of Article I, § 10 of the United States Constitution. Plaintiffs claim that they will be deprived of their constitutional rights in violation of 42 U.S.C. § 1983 when the Defendants enforce the election results.

### FINDINGS OF FACT

The Court makes the following findings of fact:

1. Plaintiff, M&F, is a duly licensed corporation in the State of Ohio. Its principle place of business is in Franklin County, Ohio. M&F owns and operates a neighborhood grocery store, doing business as Key Food, at 1975 Cleveland Avenue, Columbus, Ohio.

2. Plaintiff, Mohammed Rahman, is the sole shareholder and owner of M&F.

3. Defendant Donna Owens is the Director of the Ohio Department of Commerce. Her principal place of business is at 77 S. High Street, Columbus, Ohio 43266–0544.

4. Defendant William Vasil is the Superintendent of the Division of Liquor Control of the Ohio Department of Commerce. His principal place of business is 6606 Tussing Road, Reynoldsburg, Ohio 43068–9005.

5. M&F is the holder of Liquor Permit No. 5382175–00001 issued by the Ohio Department of Commerce, Division of Liquor Control. The permit carries C–1, C–2, and D–6 classifications which authorize the sale of beer and wine for off-premise consumption only. M&F has held its permit and operated under it continuously at the same location since April 1991. (Pls. Ex A).

6. The sale of taxable goods constitutes thirteen percent (13%) of the total sales of Key Food. Alcohol sales constitute an undetermined portion of that percentage. (Pls.Ex. B).

7. Pursuant to O.R.C. §§ 4301.32 and 4305.14, the following relevant local option questions appeared on the November 4, 1997 general election ballot: "Shall the sale of beer as defined in section 4305.08 of the Revised Code under permits which authorize sale for off-premises consumption only be permitted in this Columbus 17–D? Shall the sale of wine and mix beverages by the package, under permits which authorized sale for off-premise consumption only, be permitted in Columbus 17–D?" A majority of voters at that election in the City of Columbus, Ward 17, Precinct D voted "no" on both issues. (Joint Ex. 2).

8. O.R.C. § 4301.36 provides that if a majority of the electors vote "no" on the question, then no permit holder may sell intoxicating liquor of the kind or in the manner specified in the ballot question. O.R.C. § 4305.14 provides that if a majority of the electors vote "no" on the question, then no permit holder may sell beer within the precinct as specified in the question. O.R.C. §§ 4301.37 and 4305.14 provide that another election on the same question may not be held for a period of four (4) years.

9. O.R.C. § 4301.391 provides that no permit premises shall remain in operation inconsistent with the results of a local option election after the thirty (30) day period set forth in O.R.C. § 4301 .39, to wit, thirty (30) days after certification of the final results of the election by the Franklin County Board of Elections.

10. The Franklin County Board of Elections certified the election on November 19, 1997. (Joint Ex. 2).

11. Plaintiffs received the following notice from the Defendants:

As a result of the Local Option Election held on November 4, 1997 the City of Columbus, Franklin County, Ward 17, Precinct D, the sale of beer, wine and certain pre-packaged mixed drinks for carry out and intoxicating liquor on Sunday has become illegal. Therefore your C1 C2 D6 permit is totally unlawful. (Joint Ex. 1). This vote was certified by the Franklin County Board of Elections on November 19, 1997 and received by the department on November 17, 1997. Therefore, you must cease the sale of beer, wine and certain pre-packaged mixed drinks for carry out and intoxicating liquor no later than December 18, 1997. (Joint Ex. 1).

12. M&F has a lease agreement with Schottenstein Trustees through July 31, 2001 for the building located at 1975 Cleveland Avenue, Columbus, Ohio. The lease agreement does not mention liquor. (Pls.Ex. E).

13. Mr. Terry Towns, head of the Linden Area Development Corporation, described problems in Precinct D as they relate to drugs, loitering, and prostitution. In order to rid the Linden area of this blight and to secure the community's safety, the citizens have voted the Linden area dry.

## CONCLUSIONS OF LAW

States have broad powers under the Twenty–First Amendment to the United States Constitution and from their inherent police powers to regulate, restrict, or ban the sale of alcoholic beverages. *37712, Inc. v. Ohio Dept. Of Liquor Control,* 113 F.3d 614, 618 (6th Cir.1997) (citing *44 Liquormart, Inc. v. Rhode Island,* 517 U.S. 484, 116 S.Ct. 1495,

1514, 134 L.Ed.2d 711 (1996); *California v. LaRue*, 409 U.S. 109, 114, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972)). Such power cannot be used by the states, however, to violate a person's constitutional rights. *Id.*

### I. Substantive Due Process

■ The Sixth Circuit held in *Brookpark Entertainment, Inc. v. Taft*, 951 F.2d 710, 715 (6th Cir.1991), that the "holder of an Ohio liquor license has a property interest protected under the Due Process Clause." The statutes at issue do not, however, allow the voters to revoke a liquor license. The statutes only allow the voters to prohibit particular kinds of liquor sales within their precinct. M&F has the option of either: (1) transferring its permit to another location outside the area voted dry; or (2) putting its permit into safekeeping until the permit is sold or another location is found. Hence, it is questionable whether M&F has been deprived of any property at all, *see Colson v. City of Shaker Heights*, 880 F.Supp. 1161, 1166 (N.D.Ohio 1995), *aff'd*, 103 F.3d 129 (Table), No. 95–3538, 1996 WL 683595 (6th Cir. Nov.22, 1996), and thus whether the Due Process Clause is even implicated.[1]

The Sixth Circuit has twice held that the local option election laws do not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *37712, supra; Colson, supra*. In *Colson*, the holder of a D–5 liquor permit contended that the local option election laws arbitrarily deprived it of its property, the liquor license, and were not rationally related to a legitimate state purpose. *Colson*, 880 F.Supp. at 1166. The precinct in which the holder used the permit was voted dry. The court first questioned whether the plaintiffs were deprived of any property because they could transfer the permit or put it in safekeeping. *Id.* The court then found that, unlike in *Brookpark*, the revised local option election laws do not permit voters to target particular establishments. Hence, the court held that the local option election laws do not violate the Due Process Clause. *Id.*

In *37712*, the plaintiff was the holder of Class C and D liquor permits. *37712*, 113 F.3d at 617. The precinct where the plaintiff used its permit was voted dry and the plaintiff argued that the local option election laws facially conflict with the Due Process Clause because they allow the local voters to close one or more particular kinds of alcohol merchants in an area "while leaving the businesses of other categories of alcoholic beverage dispensers in the same territory relatively or absolutely unimpaired." *Id.* at 619. The Sixth Circuit summarized the *Colson* court's reasoning and found that the local option election laws do not violate the Due Process Clause. *Id.* at 620.

Plaintiffs attempt to distinguish *37712* and *Colson* by arguing that courts have not considered the retroactive effects of the local option election laws. Plaintiffs argue that the voters' decision to make Precinct D dry amounts to a law that retroactively interferes with M&F's property right and Rahman's property and liberty interests in pursuing his occupation in violation of their substantive due process rights.

The Supreme Court has given extensive guidance as to what constitutes retroactive legislation:

> A statute does not operate "retrospectively" merely because it is applied in a case arising from conduct antedating the statute's enactment, or upsets expectations based on prior law. Rather, the court must ask whether the new provision attaches new legal consequences to events completed before its enactment. The conclusion that a particular rule operates "retroactively" comes at the end of a process of judgment concerning the nature and extent of the change in law and the degree of connection between the operation of the new rule and a relevant past event.... [R]etroactivity is a matter on which judges tend to have "sound ... instinct[s]," and familiar **considerations of fair notice,**

---

1. The liquor license was issued to M&F, not to Rahman, so the local option election laws could not have deprived Rahman of any property, and he cannot claim any violation of his due process

rights. *See Colson*, 880 F.Supp. at 1166. This Court will, however, refer to the liquor license as "their license."

**reasonable reliance, and settled expectations offer sound guidance.**

*Landgraf v. USI Film Products,* 511 U.S. 244, 269–70, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994) (internal citations omitted) (emphasis added). The Court further explained that "[e]ven uncontroversially prospective statutes may unsettle expectations and impose burdens on past conduct: a new property tax or zoning regulation may upset the reasonable expectations that prompted those affected to acquire property...." *Id.* at 270 n. 24 (citing L. Fuller, *The Morality of Law* 60 (1964) ("If every time a man relied on existing law in arranging his affairs, he were made secure against any change in legal rules, the whole body of our law would be ossified forever.")).

▐ The effects of the November election are prospective only. Only those sales which occur thirty (30) days after the November 19, 1997 election certification date are prohibited. The law passed at the election has no retroactive aspect because it does not attach new legal consequences to any event, such as liquor sales, completed before its enactment. Further, the local option election statutes were first enacted in 1953. Plaintiffs have held their liquor permit since 1991. In accepting the liquor permit, Plaintiffs accepted the liquor permit subject to all the rules and regulations enacted to control the sale of liquor in the State of Ohio. *Solomon v. Liquor Control Comm'n,* 4 Ohio St.2d 31, 212 N.E.2d 595 (1965). Plaintiffs knew or should have known that the citizens had this option under the laws of the State of Ohio. Therefore, the Supreme Court's concerns of lack of fair notice, reasonable reliance, and settled expectations are not present here. Thus, Plaintiffs' argument that the local option election statutes violate their right to substantive due process because they allow retroactive legislation must fail.[2]

▐ The referendum result then would be an unconstitutional violation of Plaintiffs' substantive due process rights only if Plaintiffs can show that the result is "substantively arbitrary and capricious, bearing no relation to the police power." *37712,* 113 F.3d at 619 (internal quotations omitted) (citing *Eastlake v. Forest City Enterprises, Inc.,* 426 U.S. 668, 676, 96 S.Ct. 2358, 49 L.Ed.2d 132 (1976); *Gutzwiller v. Fenik,* 860 F.2d 1317, 1328 (6th Cir.1988)). In other words, a referendum result is arbitrary and capricious only if the law is not rationally related to a legitimate governmental interest. *Id.* (citing *Curto v. Harper Woods,* 954 F.2d 1237, 1243 (6th Cir.1992)). "However, if any conceivable legitimate governmental interest supports the contested ordinance, that measure is not 'arbitrary and capricious' and hence cannot offend the substantive due process norms." *Id.* (citing *Curto, supra* ).

▐ The Sixth Circuit has twice found that the local option election laws do not violate the Due Process Clause. *37712, supra; Colson, supra.* As the Sixth Circuit stated in *37712,* the "[l]ocal voters possess a legitimate interest in regulating the types, modes, and circumstances of alcohol sales in their neighborhood. Legislative distinctions between various types, modes, and circumstances of dispensing alcoholic beverages generally constitute a reasonable means of furthering the public interest." *37712,* 113 F.3d at 620; *see also Colson,* 880 F.Supp. at 1166. Moreover, the voters possess a legitimate interest in the safety of their community, and voting the Precinct dry is a reasonable means of furthering that interest. Plaintiffs have failed to show any evidence that the referendum result is arbitrary and capricious. Therefore, Plaintiffs have not demonstrated that their property or Rahman's liberty interest

---

**2.** Even if this Court were to find that the legislation operated retroactively, the referendum result still would not violate the Due Process Clause. Retroactive legislation is constitutional if "the retroactive application of the legislation is itself justified by a rational legislative purpose." *Pension Benefit Guar. Corp. v. R.A. Gray & Co.,* 467 U.S. 717, 730, 104 S.Ct. 2709, 81 L.Ed.2d 601 (1984). Plaintiffs claim the legislation operates retroactively because Key Food's liquor permit

was valid until February 11, 1998. Assuming this is the case, the retrospective application is still rationally related to legitimate government interests. The voters have legitimate interests in protecting the health, safety, and morals of their community. The voters have decided that alcohol sales adversely affect these interests, particularly their safety, and the means chosen—making the precinct dry—is rationally related to those interests.

was deprived in violation of the Due Process Clause of the Fourteenth Amendment.[3]

## II. Contracts Clause

■ Article I, § 10 of the United States Constitution declares "No State shall ... pass ... [a] Law impairing the obligations of Contracts." Although the language of the Contracts Clause appears to be absolute, the Supreme Court has recognized that the right to contract is subject to a state's exercise of its police power. *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 241, 98 S.Ct. 2716, 57 L.Ed.2d 727 (1978). The Supreme Court has delineated a three prong test to determine whether a state law violates the Contracts Clause. *Id.* at 244–50.

■ First, this Court must ask whether the law operates as a substantial impairment of existing contractual relationships. This first inquiry has three components: (1) whether there is a contractual relationship; (2) whether a change in law impairs the contractual relationship; and (3) whether the impairment is substantial. *General Motors Corp. v. Romein*, 503 U.S. 181, 186, 112 S.Ct. 1105, 117 L.Ed.2d 328 (1992) "Minimal alteration of contractual obligations may end the inquiry at its first stage." *Spannaus*, 438 U.S. at 245. "In determining the extent of the impairment, we are to consider whether the industry the complaining party has entered has been regulated in the past." *Energy Reserves Group, Inc. v. Kansas Power and Light Co.*, 459 U.S. 400, 411, 103 S.Ct. 697, 74 L.Ed.2d 569 (1983). In fact, the Supreme Court recognized that "[o]ne whose rights, such as they are, are subject to state restriction, cannot remove them from the power of the State by making a contract about them." *Id.* (citing *Hudson Water Co. v. McCarter*, 209 U.S. 349, 357, 28 S.Ct. 529, 52 L.Ed. 828 (1908) (internal quotations omitted)).

■ Second, if the state law constitutes a substantial impairment, this Court must inquire into whether the state has a significant and legitimate public purpose in justifying the law. *Id.* at 411–12.

■ Third, this Court must ask whether the effect of the law on contracts is reasonable and appropriate given the public purposes behind the law. *Id.* at 412–13. In reviewing economic and social legislation, this Court will defer to legislative judgment as to the necessity and reasonableness of a law. *Id.* Moreover, the level of scrutiny to which the legislation is subject will decrease as the severity of the impairment decreases. *Id.* at 411.

Initially, this Court must determine whether the referendum result even implicates the Contracts Clause inasmuch as the contract between Schottenstein Trustees, the landlord, and M&F contains no terms about the sale of alcohol at Key Food. In *Romein*, 503 U.S. at 189–90, the Supreme Court held that a state workers' compensation statute did not implicate the Contracts Clause because the employment contracts entered into by General Motors and its employees were silent with respect to workers' compensation. The Court, therefore, found that the "statute did not change the legal enforceability of the employment contracts here. The parties still have the same ability to enforce the bargained-for terms of the employment contracts that they did before ... the statute was enacted." *Id.* The Court rejected the view that the Contracts Clause protects "against all changes in legislation, regardless of the effect of those changes on bargained-for agreements." *Id.* at 190.

Similarly, the presence or absence of a liquor permit does not affect the bargained-for terms of the lease nor does it change the enforceability of the lease. Thus, the Contracts Clause is not even implicated under the facts of this case.

■ Even if this Court were to find that the Contracts Clause is implicated by the referendum result, the law would still pass constitutional muster. Contrary to Plaintiffs' contention, the law does not substantially

---

**3.** Plaintiffs' argument that the government has deprived Rahman of his liberty and property interests in pursuing his occupation is unpersuasive. This Court fails to see how the referendum result deprives Rahman of any liberty or property interests he may have in pursuing his occupation.

impair Plaintiffs' contractual obligations under the lease. Although, the referendum result will likely cause the Plaintiffs to lose somewhere between one percent (1%) and thirteen percent (13%) of gross sales, Key Food can still generate anywhere between eighty-seven percent (87%) and ninety-nine percent (99%) of its gross sales made when the sale of liquor was not prohibited.[4] Moreover, the sale of alcohol is heavily regulated in the State of Ohio, *see State v. VFW Post 3562*, 37 Ohio St.3d 310, 311–12, 525 N.E.2d 773, 775 (1988); O.R.C. §§ 4301.01–4303.99, which mitigates against a finding of substantial impairment. *Energy Reserves*, 459 U.S. at 411. Furthermore, the November election did not impose a sudden, unanticipated change in contractual obligations; Plaintiffs were on notice that at any time the local community could vote the precinct dry. *See Spannaus*, 438 U.S. at 249. The local option election laws have been in effect in some form since 1953. If Plaintiffs believed that alcohol sales would be an integral part of their grocery store business, knowing that the community could vote the precinct dry at any time, the Plaintiffs should have put a clause in their lease that allowed them to cancel the lease if the community voted the precinct dry. In light of the fact that alcohol sales are and have been heavily regulated and the fact that Plaintiffs should have been aware that Precinct D could become dry at any time, this Court finds that Plaintiffs have not shown that their contractual obligations have been substantially impaired.

Even if the referendum result imposes more than a minimal change to the lease, it is typical of legislation that addresses generalized and legitimate public concerns. The purposes of the initiative include furthering the safety, health, and welfare of the people of Precinct D. In the referendum, the voters in Precinct D manifested a belief that by making their precinct dry, they will improve the quality of life in their neighborhood. Indeed, Mr. Towns, one of the organizers of the referendum, made clear in his testimony that the "drying" of Precinct D was necessary for the overall safety of the neighborhood and a first step in addressing that neighborhood's blight. This testimony was uncontroverted. Especially in light of the deference given to local judgments about economic and social regulation, the vote to make Precinct D dry is a reasonable and narrowly tailored means of promoting legitimate interests.

## CONCLUSION

For the foregoing reasons, the Court finds that O.R.C. §§ 4301.32, 4301.36, 4301.39, 4301.391, 4303.272, and 4305.14 do not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution or the Contracts Clause of Article I, § 10 of the United States Constitution. Therefore, Plaintiffs' claims against the Defendants under 42 U.S.C. § 1983 are **DISMISSED** as a matter of law. The Court, pursuant to 28 U.S.C. § 1367(c)(3), declines to exercise supplemental jurisdiction over the state law claims and those claims are **DISMISSED** without prejudice.[5] The Clerk shall remove this case from active status.

**IT IS SO ORDERED.**

---

4. Plaintiffs' evidence indicates that thirteen percent (13%) of Key Food total sales volume consists of taxable items such as alcohol and cigarettes. Of that thirteen percent (13%), however, it is unclear how much consists of alcohol sales.

5. This Court has discretion whether to exercise supplemental jurisdiction. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). The parties did not brief any of the state issues. Therefore, this Court, as a matter of comity and to ensure an accurate reading of state law, declines to exercise supplemental jurisdiction.