Robert CURTO, Individually and d/b/a Curto's Auto Service, Plaintiff–Appellant,

v.

CITY OF HARPER WOODS, an incorporated municipality, Defendant–Appellee.

No. 90–2267.

United States Court of Appeals, Sixth Circuit.

Argued Aug. 5, 1991.

Decided Jan. 28, 1992.

**1238**

Lawrence M. Scott (argued and briefed), Magar, Monahan, Donaldson & Alber, Detroit, Mich., for plaintiff-appellant.

James E. Tamm, Jacqueline I. Heath (argued and briefed), Plunkett, Cooney, Rutt, Watters, Stanczyk & Pedersen, Detroit, Mich., for defendant-appellee.

Before: KENNEDY and MILBURN, Circuit Judges, WILHOIT, District Judge.*

PER CURIAM.

Plaintiff-appellant Robert Curto, individually and d/b/a/ Curto's Auto Service, ("Curto" or "Plaintiff") appeals the summary judgment in favor of the Defendant-appellee the City of Harper Woods ("the

---

* The Honorable Henry R. Wilhoit, Jr., United States District Judge for the Eastern District of Kentucky, sitting by designation.

City" or "Defendant"), whereby the District Court upheld the constitutionality of a zoning ordinance. The ordinance limits the number of vehicles which a service station may allow to be parked on the premises, regardless of the size of the parking lot. The issue on appeal is whether the district court erred in granting summary judgment for the City. For the following reasons, we would affirm in part and reverse in part the District Court's judgment and remand for further proceedings.

## I.

Plaintiff-appellant Curto has operated an automobile repair business, Curto's Auto Service, in Harper Woods, Michigan, since 1984. Prior to that time, the business was operated as a gas/service station. There are two "service bays" on the premises. In February 1986, Curto was served with a citation for violating Ordinance § 12–78, which prohibited parking more than three cars per service bay. Section 12–78 of the City of Harper Woods, Mich., Code provided in pertinent part:

> (a) Parking at gasoline stations, with the exception of cars at the pumps or waiting for immediate service shall be limited to three passenger type cars for each service [bay], attendant's vehicles and other vehicles incidental to service, except that any partially dismantled or wrecked vehicle shall not be stored for more than a total of eight (8) hours outside the building on said premises. Proper parking space shall be provided on the premises for the above number of vehicles.

The City had apparently taken action against Plaintiff because of complaints by neighboring residential property owners about too many cars being parked on the lot. The case was heard in state district court. Reference is made herein to state court proceedings as they form part of the procedural history of the case *sub judice.*

On October 16, 1987, Curto and the City entered into a plea agreement, whereby Curto agreed to make certain improvements to the outward appearance of his property in exchange for which the City agreed to be somewhat lenient with the parking regulations. Appellant pleaded "no contest" to the charged violations, and made improvements to his property.

This did not end the problem. Although no new citizen complaints were made after Curto painted the building, built a concrete block wall, and landscaped the area, he received another citation in November 1987 for exceeding the "three car" limit.[1] Curto again contested the alleged violations in local district court, where he asserted the ordinance was unconstitutional. The court disagreed, but held that the City was estopped from prosecuting the ordinance by the earlier plea agreement. The court also opined that the term "waiting for immediate service," from section 12–78, meant that the vehicle was on the premises, it had a service order written, employees were there to work on it, and the only thing delaying the repairs was that somebody else was waiting ahead in line. (Tr.Proc. 4/14/88 at 22–23, *People v. Curto* (Mich. 32A Jud'l Dist., No. 87–44931CM), found at Ex. D, Pl's response.) This construction of the ordinance essentially brought Curto into compliance because it allowed more cars to be considered to be "waiting for immediate service," thus allowing a greater total number of cars to be legally parked

---

1. City Attorney, Ronald Greve, conceded that "the neighborhood complaints are gone." (Tr. Proc. 5/23/88 at 8, *People v. Curto*, (Mich. 32A Jud'l Dist., No. 87–44931CM), found at Ex. C, Br. Supp. Pl's Answer to Def's Mot. for Summ. J. [hereinafter "Pl's response"].) The City's Building Inspector, Gerard Owczarzak, testified at deposition, as follows:

    Q. Do you have any personal knowledge or recollection of having received any neighbors' or residents' complaints since the time the physical improvements were installed?

    A. Once the wall went up and Mr. Curto cleaned up the building I haven't received any complaints from neighbors.

    Q. So if the second complaint came after the wall went up and Mr. Curto improved the building, it could not have been as a result of neighbors' or citizens' complaints?

    A. That's right. So far I haven't received any complaints since the wall went up from the neighbors.

    (Dep. Owczarzak 2/14/90 at 17.)

on the premises. The second complaint was voluntarily dismissed.

In September 1988, the City amended the code to make clear that the ordinances concerning "gasoline stations" applied to "service stations" as well, regardless of whether gasoline was sold or kept on the premises.[2] More importantly, section 12–78 was amended to define "waiting for immediate service" as follows:

Vehicles waiting for immediate service are defined as those vehicles at a fuel pump or waiting in line for an available fuel pump. Vehicles waiting for immediate service also include any vehicle awaiting service while the owner or operator remains on the premises for a period of not to exceed 30 minutes. Vehicles which are not being actually worked on because parts are on order, because there is a backlog of work, or because of any other reason shall not be considered vehicles waiting for immediate service.

Subsequent to the amendment, Curto was cited for a violation of the amended ordinance. This lawsuit followed.

In the complaint filed on March 10, 1989, Curto challenged the validity of the ordinance, alleging that it deprives him of due process and equal protection under the law, and that it affected a "taking" of his property. He sought money damages pursuant to 42 U.S.C. § 1983 and for the "taking," an injunction against the enforcement of the ordinance, and damages under a claim of detrimental reliance/promissory estoppel.

The City brought a Motion for Summary Judgment, pursuant to both Rule 56, Fed. R.Civ.P., and Rule 12(b). In addition to arguing that the Plaintiff had failed to state a valid claim, the City asserted that he was unable to overcome the presumption that the ordinance is valid, and there-fore, the plaintiff would be unable to sustain his burden of proof in this matter.[3] The City likewise contended that Curto would be unable to establish a confiscation of property claim. The City's motion was supported by an exhibit which is a certified copy of the amended ordinance in question, and by the Affidavit of Counsel for the City. In his affidavit, counsel swears that "the contents of the attached Motion are true and accurate to the best of his knowledge and belief; and the facts are admissible as evidence."

After hearing oral arguments, the District Court sustained the motion, rendering the following oral opinion for the record.

All right. The court will grant the defense motion for summary judgment in this case.

The Court relies, first of all, upon the presumption of validity of the ordinance, and the fact that the plaintiff has failed to raise any question of fact or any question which would rebut the presumption of validity or to suggest that this ordinance is arbitrary or unreasonable or an unreasonable restriction upon plaintiff's use of his property or deprivation of his property or is without a totally rational basis.

The regulation of off-street parking does bear a reasonable relationship to a permissible legislative objective, and that is all it needs to do to survive the due process challenge presented here.

There is a clearly rational basis for the existence of such ordinances. It advances the governmental interest in the safety and welfare of the citizenry, in addition to the aesthetic needs of the neighborhood.

The ordinance also assures adequate egress and ingress from areas surrounding the premises in case of public safety emergencies, and may well assist in pre-

---

**2.** Section 12–70 was amended to provide: DEFINITIONS—For the purpose of this division, certain words and tenses used herein shall be interpreted or defined as set forth in Section 10–101 of the City Zoning Ordinance. However, the terms "service station" or "gasoline service station", as used in this article, shall be deemed to refer to any facility where motor vehicles are serviced or repaired re-gardless of whether gasoline or other fuels are offered for sale on the premises.

**3.** The City presented several other arguments for dismissal, which were overruled by the District Court. As no cross-appeal has been taken by the defendant, the merits of these arguments are not before this Court.

venting congestion of the neighborhood and overflow of vehicles onto the surrounding properties or the street.

There obviously is no taking without compensation because the plaintiff still conducts business that he historically did on his premises. Although he has eliminated the sale of gasoline, he is still able to use the property for the purpose to which it had been adapted.

Whether the ordinance is considered a regulatory one or a zoning one, it enjoys the same scope of examination by this Court and passes the scrutiny of the Court regardless of the category in which it's placed.

There is no question either and no suggestion on this record of a deprivation of the equal protection of the laws.

And the Court does not find that a failure to exhaust has occurred or was required here, and does not find that the city is immune from such a suit as this, for violation of constitutional rights. Judgment is entered on the other bases only.

(Tr.Proc. 9/17/90 at 23–25). The District Court entered an order dismissing all counts with prejudice.[4] A timely appeal followed.

## II.

Curto contends that the City has failed to meet its burden under both Rule 12(b)(6) and Rule 56, Fed.R.Civ.P. The record discloses that the District Court and the parties treated the motion on the merits as a motion for summary judgment. The issue before this Court does not concern the sufficiency of the complaint. This is not a case where it appears beyond doubt that Plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). Therefore, the appropriate standard of review is that which applies to a grant of summary judgment pursuant to Rule 56.

Appellate review of a grant of summary judgment is *de novo. Pinney Dock and Transport Co. v. Penn Cent. Corp.,* 838 F.2d 1445, 1472 (6th Cir.), *cert. denied,* 488 U.S. 880, 109 S.Ct. 196, 102 L.Ed.2d 166 (1988). The trial court's grant of summary judgment should be sustained if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc.,* 862 F.2d 597, 601 (6th Cir.1988).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case. *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir.1989), citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In *Celotex,* the Court of Appeals had held "that petitioner's summary judgement motion was rendered 'fatally defective' by the fact that petitioner 'made no effort to adduce *any* evidence, in the form of affidavits or otherwise, to support its motion.'" *Id.,* at 321, 106 S.Ct. at 2552. Disagreeing with the decision below, the Supreme Court held, "we find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* (emphasis in original) "[W]here the nonmoving party bears the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on 'the pleadings, depositions, answers to interrogatories, and admissions on file.'" *Id.* at 324, 106 S.Ct. at 2553.

Once the moving party satisfies its burden of showing an absence of evidence to support the nonmoving party's case, the nonmoving party bears the burden of presenting some "'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (em-

---

**4.** On January 10, 1991, the District court entered an order sustaining the plaintiff's motion for clarification of the order of dismissal. The Order Re: Plaintiff's Motion for Clarification or-

ders that all counts be dismissed with prejudice, except for the claim of estoppel, which was dismissed without prejudice.

phasis in original). Viewing all inferences to be drawn from the underlying facts contained in affidavits, pleadings, etc. in the record in a light most favorable to the party opposing the motion, *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962), a court should grant summary judgment where the party opposing the motion "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552.

■ An ordinance which represents an exercise of the municipality's police powers is presumed to be constitutionally valid, with the burden of showing unreasonableness being cast upon those who challenge the ordinance. *See Goldblatt v. Hempstead,* 369 U.S. 590, 595–96, 82 S.Ct. 987, 990–91, 8 L.Ed.2d 130 (1962), and cases cited therein. The Eighth Circuit has held that "[s]uch presumptions are entitled to as much force and effect under summary judgment procedure as elsewhere; and thus if undisputed facts and relevant presumptions are such that the moving party would be entitled to a directed verdict at trial, he will be entitled to summary judgment under Rule 56, unless the opposing party offers evidence of a substantial character rebutting the presumption or presents good reasons, in accordance with Rule 56(f), for a failure to offer such evidence." *Wermager v. Cormorant Township Bd.,* 716 F.2d 1211, 1214 (8th Cir. 1983).

### A.

■ Curto argues that the City's conclusory statements in its motion that Plaintiff would be unable to meet his factual burden were inadequately supported. Plaintiff asserts that the only affidavit submitted was signed by defense counsel himself, rendering it defective for purposes of Rule 56, which requires that supporting affidavits "shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed.R.Civ.P. 56(e). Because of the alleged insufficiency of the support-

ing materials, Curto argues at the outset that the District Court erred in granting the Defendant's motion.

The City relied extensively upon the presumption of validity of the ordinance in sustaining its burden to show that there was no genuine issue of material fact to be tried. Although the parties are not in agreement as to whether the ordinance in question is a zoning or a regulatory ordinance, neither has taken issue with the District Court's conclusion that either way, the ordinance enjoys the same scope of review. Both parties rely upon the Michigan Court of Appeals decision in *Hecht v. Niles Township.,* 173 Mich.App. 453, 434 N.W.2d 156, 159 (1988) ("The ordinance comes to us clothed with every presumption of validity.").

In *Hecht,* the court held that in order to successfully challenge an ordinance, the plaintiff must prove, "first, that there is no reasonable governmental interest being advanced by the present zoning classification itself, ... or secondly, that an ordinance may be unreasonable because of the purely arbitrary, capricious and unfounded exclusion of other types of legitimate land use from the area in question." *Id.* 434 N.W.2d at 158 (reference omitted). "Thus, a zoning ordinance is invalid if it fails to advance a legitimate governmental interest or if it is an unreasonable means of advancing a legitimate governmental interest." *Id.* at 159.

The City cited to the trial court Michigan authorities which upheld parking regulations and found them to be valid exercises of police power. *See, e.g., Recreational Vehicle United Citizens Association v. Sterling Heights,* 165 Mich.App. 130, 418 N.W.2d 702 (1987). In support of its position that the ordinance was reasonably related to a governmental interest grounded in the police power, the City advanced a number of interests recognized as legitimate and said to be served by the ordinance. These include: preventing unsightliness caused by wrecked vehicles, preventing traffic congestion and overflow of parked vehicles into surrounding properties or the street, controlling harmful fumes

and odors, reducing the risk of fire hazards, ensuring adequate ingress and egress by emergency vehicles, and preserving the aesthetic value of the property and surrounding neighborhood. (Def's Br.Supp. Summ.J. at 10). The City asserted summarily that the ordinance was reasonably tailored to serve the needs of the health, safety and general welfare of the citizens of Harper Woods, and was not arbitrarily applied to Curto. (*Id.* at 12).

Given the nature of the cause of action and the presumption of validity to which the Ordinance is entitled, and despite the relative dearth of material from the record relied upon in support of its Motion for Summary Judgment, we find the City sustained its initial burden under Rule 56.

### B.

On the merits, Curto asserts that he submitted unrebutted evidence sufficient to establish that the ordinance is invalid, is a violation of his right to equal protection and due process because it fails to advance a legitimate governmental interest, is an unreasonable means for attempting to advance any such legitimate governmental interest, is unreasonably and arbitrarily applied to the Plaintiff, and amounts to a confiscation without just compensation. In support of his response to the motion, Curto relied upon a letter from the city attorney to the city manager and the transcripts of several proceedings in the related state court action, in support of Curto's claim that he has been singled out and treated arbitrarily. Robert Curto's Affidavit in Support of Answer to Motion for Summary Judgment detailed the measures he has taken to improve the property and to eliminate certain hazards justifying the ordinance.

### (1)

■ Curto first argues that the ordinance does not pass constitutional muster based on substantive due process analysis. Under this analysis, an ordinance or regulation is invalid if it fails to advance a legitimate governmental interest or if it is an unreasonable means of advancing a legitimate governmental interest. *See Williamson v. Lee Optical*, 348 U.S. 483, 487–88, 75 S.Ct. 461, 464–65, 99 L.Ed. 563 (1955) (stating that the constitutionality of a law will be upheld if "there is an evil at hand for correction, and that it might be thought that the particular legislative measure was a rational way to correct it"). Curto argues that the record is unclear as to the municipality's reasons for enacting this ordinance. However, the record does contain reasons as to why the City might have passed the ordinance. Such supposition is adequate for purposes of performing substantive due process analysis. *See Williamson*, 348 U.S. at 487, 75 S.Ct. at 464 (stating that "[t]he legislature *might* have concluded ..." and "the legislature *may* have concluded ..." (emphasis added)).

■ We agree with the District Court's conclusion that the governmental interests are legitimate. *See* Tr.Proc. 9/17/90 at 24. The ordinance advances the safety and welfare of its citizenry and addresses aesthetic concerns of the community. *Id.* Further, the means employed are reasonable on their face. The concerns addressed by the ordinance are implicated when the number of cars parked on the premises significantly exceeds the servicing capabilities of the business. Under such circumstances, the parked cars will sit there for a long period of time, hindering access to the facility and degrading the aesthetic quality of the community. On the other hand, the ordinance seeks to allow a service station to maintain a viable business without hindering its ability to service automobiles. Accordingly, the ordinance would presumably allow a business a sufficient number of automobiles on which to perform repairs for a reasonable length of time, while promoting the interests of safety and aesthetics.

However, Curto identified several questions of fact upon which he claims he should have been permitted to present additional evidence to the trier of fact. He argued, before the trial court and this Court, that the ordinance is unreasonable because the arbitrary figure of three cars per bay bears no rational relationship to the actual problems which the ordinance is

supposedly designed to correct. Specifically, the ordinance makes no distinction with regard to the size of the physical area which a service station actually has for parking in applying the "three car per bay" limit.

This is borne out in two hypothetical applications which suggest that the Ordinance may be unreasonable when applied to the plaintiff. First, the plaintiff argued that the ordinance would apply even if his service station was situated upon a lot two square miles in size. He asserted at oral arguments before the District Court, (Tr. Proc. 9/17/90 at 13), and before this Court, that if he complied with all other requirements concerning parking, ingress and egress, etc., he could park at least thirty cars on his lot. Counsel for the City on appeal placed the accurate figure at "twenty-two" during oral argument to this Court. Even the City's figure would allow approximately ten more cars than would be permitted under the current "three cars per bay" rule.

In a second hypothetical presented in argument to both the trial court (Id. at 14) and this Court Curto asserted that if he leased parking space from an adjoining property owner who maintains his offices as an architect next door to the plaintiff, the ordinance would not prohibit this means of circumventing the rule. Yet if plaintiff purchased the architect's lot and accessed it to Curto's property, he would be unable to park additional cars on the lot.

Carrying the ordinance to its "illogical" extreme, it could limit the number of automobiles to three per bay on the premises of a two-bay operation, even if ten acres of parking space was available, and average servicing capabilities would accommodate significantly more automobiles than the limits imposed by the ordinance. This suggests the possibility that the ordinance could be arbitrary and unreasonable as applied to Curto.

██ After unsuccessfully searching the record for proof of Curto's servicing capabilities and for exhibits in the form of photographs, drawings, and proof of the exact dimensions and configuration of Curto's lot, this Court must conclude that the record is not sufficient to determine whether the "three cars per bay" provision of the ordinance is arbitrary or irrational or illogical when applied to Curto's Auto Service.[5] For this reason, this matter will be remanded for further development of the record.

(2)

██ Curto next argues that the ordinance denies him equal protection of laws. The guarantee of equal protection requires that any distinction or classification be rationally related to a legitimate governmental interest. In reviewing a local economic regulation, a court must show deference to legislative determinations as to particular statutory discriminations:

> States are accorded wide latitude in the regulation of their local economies under their police powers, and rational distinctions may be made with substantially less than mathematical exactitude.... In short, the judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines.... [I]n the local economic sphere, it is only the invidious discrimination, the wholly arbitrary act, which cannot stand consistently with the Fourteenth Amendment.

*New Orleans v. Dukes*, 427 U.S. 297, 303, 96 S.Ct. 2513, 2516, 49 L.Ed.2d 511 (1976)

---

5. We observe that the transcripts of several depositions taken prior to the District Court's judgment and containing pertinent testimony, were not filed in the record until after the District Court's judgment. Specifically, Harper Woods City Manager James Leidlein testified that the size of the lot is not a factor in determining the number of cars permitted under § 12–78. (Dep. Leidlein 2/14/90 at 28). Building Inspector Owczarzak testified that even if Curto's lot was an acre in size, he would still be bound by the "three cars per bay" rule. (Dep. Owczarzak 2/14/90 at 23). When asked about restrictions on a five-acre lot, City Attorney Greve responded that it might depend on the situation. (Dep. Greve 2/14/90 at 40). Mr. Greve was unable to give a definite answer to questions asked concerning the hypothetical of how the Ordinance would apply if plaintiff was to lease versus purchase, adjoining property. (*Id.*, at 40–41).

(citations omitted). In attacking this ordinance, the Plaintiff bears the burden of showing that the classification is arbitrary and cannot serve a legitimate governmental goal.

Curto contends that there is no rational basis for distinguishing between service stations and other businesses. We disagree. The distinction between service stations and other businesses is not unreasonable or arbitrary. Because other businesses do not operate in the same manner exclusively through service bays, their restrictions are based upon other criteria, such as square footage of the premises. Plaintiff argues that he should be restricted in a similar fashion. However, employing these means would not achieve the result sought by the municipality—preventing the "overbooking" of cars for service. A restriction based solely on square footage would allow Curto to park cars awaiting service for long periods of time without the ability to perform timely repairs upon them. This could adversely affect the neighborhood's safety and aesthetics.

(3)

Finally, Curto contends that the ordinance amounts to a taking of property without just compensation. This claim is not ripe, however. Plaintiff has failed to exhaust his state remedies for obtaining just compensation. *See Williamson Planning Comm'n v. Hamilton Bank,* 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985). The doctrine of inverse condemnation is recognized and constitutionally established in the State of Michigan. MICH. CONST., art. 10, § 2 (1963). *See, e.g., Heinrich v. Detroit,* 90 Mich.App. 692, 282 N.W.2d 448 (1979); *Tamulion v. Michigan State Waterways Comm'n,* 50 Mich.App. 60, 212 N.W.2d 828 (1973).

III.

For the reasons stated, the judgment of the District Court is AFFIRMED in part, and REVERSED in part, and this cause is REMANDED to the District Court for further proceedings consistent with this opinion.